# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **SUSAN BETH THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:10-00844** |
| **v.** | ) | **Judge Wiseman / Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15. Plaintiff has filed a Reply. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on September 1, 2005 with a protective filing date of August 11, 2005.[1]  Docket No. 17, Attachment ("TR"), TR 52, 367, 370.  Plaintiff alleged disability since March 28, 2001, but later amended her onset date to February 15, 2006.[2] TR 52, 397.  Plaintiff alleges disability due to diabetes, "wrist trouble," high blood pressure, "pain throughout body," and retinal problems.  TR 70.  Plaintiff's applications were denied both initially (TR 30, 370) and upon reconsideration (TR 32, 376).  Plaintiff subsequently requested (TR 50-51) and received (TR 22) a hearing.  Plaintiff's hearing was conducted on May 13, 2008 by Administrative Law Judge ("ALJ") Donald E. Garrison.  TR 13, 381.  Plaintiff and vocational expert ("VE"), Jane Brenton, appeared and testified.  TR 381-82.

On October 3, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 11-21.  Specifically, the ALJ made the following findings of fact:

> 1.    The claimant met the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2.    The claimant has not engaged in substantial gainful activity since February 12, 2006, the amended onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3.    The claimant has the following severe impairments:

---

[1]Plaintiff submitted a prior application for DIB and SSI on October 30, 2001, alleging disability since March 28, 2001.  TR 36.  She received an unfavorable decision on April 1, 2005. *Id.*

[2]The ALJ, in his decision, incorrectly stated that Plaintiff's onset date was amended to February 12, 2006.  TR 13.  This misstatement is not, however, material to the issues before the Court.

diabetes, retinopathy, neuropathy, tendonitis, degenerative joint disease, and carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for lifting/carrying 20 pounds occasionally and frequently; sitting 6 hours (3 hours uninterrupted); standing 6 hours (2 hours uninterrupted); walking 4 hours (1 hour uninterrupted); occasional reaching, handling, fingering, feeling, pushing/pulling, and operating foot controls; occasional climbing, balancing, stooping, kneeling, crouching and crawling; no reading very small print, but able to read newspaper or book print and computer screens; no exposure to unprotected heights and moving machinery; occasional operation of motor vehicles; and occasional exposure to humidity/wetness, irritating inhalants, temperature extremes and vibration.

6.   The claimant is unable to perform any past relevant work as a tow motor operator which is classified by the DOT as medium semiskilled work) (20 CFR 404.1565 and 416.965).

7.   The claimant was born on October 15, 1966 and was a younger individual on the amended disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 404.960(c), and 416.966).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from February 12, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 15-21.

On October 13, 2008, Plaintiff timely filed a request for review of the hearing decision. TR 7-10. On July 9, 2010, the Appeals Council issued a letter declining to review the case (TR 4-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the

process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by

proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability,

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

the burden shifts to the Commissioner to establish the claimant's
ability to work by proving the existence of a significant number of
jobs in the national economy which the claimant could perform,
given his or her age, experience, education, and residual functional
capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175,

1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

particularized proof of the claimant's individual vocational qualifications to perform specific

jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*,

820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages

four and five above, the Commissioner is required to consider the combined effect of all the

claimant's impairments; mental and physical, exertional and nonexertional, severe and

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).


## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: 1) failing to accord appropriate weight to the

opinion of treating physician, Dr. H. Wayne Hooper; 2) failing to properly consider all the evidence; 3) failing to properly consider Plaintiff's subjective complaints; 4) failing to order a consultative mental health evaluation and failing to correctly evaluate Plaintiff's mental conditions; 5) improperly relying upon the testimony of the vocational expert; 6) failing to consider the combined effect of Plaintiff's impairments, including obesity and its effects on her ability to work; and 7) finding that Plaintiff retained the Residual Functional Capacity to perform a range of light work. Docket No. 12. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Weight Accorded to Plaintiff's Treating Physician**

Plaintiff contends that the ALJ erred by giving more weight to the opinion of consultative

examiner, Dr. Albert Gomez, than to the opinion of treating physician, Dr. H. Wayne Hooper.

Docket No. 12-1. Defendant responds that the ALJ properly evaluated Dr. Hooper's opinion, and properly stated his reasons for discounting that opinion. Docket No. 15.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her

area of specialty than to the opinion of a source who is not a specialist.
...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Hooper treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions, as long as his opinion was consistent with, and supported by, the evidence of record.

In a February 7, 2008 office note, Dr. Hooper reported that Plaintiff "is in for completion of a restricted activity form or disability form." TR 349. Dr. Hooper indicated that he "reviewed the form and responses with [Plaintiff] in the office." *Id.* He noted that Plaintiff had limitations related to her diabetic neuropathy, retinopathy, and degenerative arthritis, which limited her ability to ambulate freely, to use her shoulders freely, and to use her "strength" freely. *Id.* Dr. Hooper also noted that Plaintiff had problems related to a loss of sensation in her feet. *Id.*

On the same date, Dr. Hooper completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) form regarding Plaintiff. TR 342-48. In that assessment, Dr. Hooper opined that Plaintiff could lift up to 10 pounds frequently, and 11-50 pounds occasionally, but could never lift above 50 pounds. TR 342. Dr. Hooper also opined that

Plaintiff could carry up to 10 pounds frequently, and 11 to 20 pounds occasionally, but could never carry above 20 pounds. *Id.* As support for those findings, Dr. Hooper noted Plaintiff's diabetic neuropathy, degenerative arthritis, knee pain, and shoulder pain. *Id.* Dr. Hooper further opined that Plaintiff could sit for 4 hours (2 hours uninterrupted), stand for 1 hour (without interruption), and walk for 1 hour (15 minutes uninterrupted). TR 343. As support for these findings, Dr. Hooper noted Plaintiff's need to lie down at intervals throughout the day. *Id.* Dr. Hooper additionally opined that Plaintiff could occasionally reach overhead, push/pull, and operate foot controls; could frequently reach in all other directions, handle, finger, feel, and balance; could occasionally climb ramps/stairs, stoop, and kneel, but never climb ladders/scaffolds, crouch, or crawl; could hear and understand simple oral instructions and communicate simple information; could use a telephone to communicate; could not read "very small print," but could read ordinary newspaper or book print and could view a computer screen; could avoid ordinary hazards in the workplace; could determine differences in shape and color of small objects; could never be exposed to unprotected heights, temperature extremes, or vibration, but could occasionally be exposed to humidity/wetness; and could frequently be exposed to moving machinery, operating a motor vehicle, and irritating inhalants. TR 344-46. Dr. Hooper opined that Plaintiff could be exposed to "Moderate (Office)" noise; could perform activities like shopping; could travel without a companion for assistance; could ambulate without using a wheelchair, walker, 2 canes, or 2 crutches; could use standard public transportation (although he noted that Plaintiff drives); could climb a few steps at a reasonable pace with the use of a single hand pull; could prepare a simple meal and feed herself; could care for her personal hygiene; and could sort, handle, and use paper files, but could not walk a block at a reasonable pace on rough

or uneven surfaces.  TR 346-47.

The ALJ accorded Dr. Hooper's February 7, 2008 assessment no weight because it was unsupported by his own treatment notes and the objective medical evidence of record.  TR 19. Specifically, the ALJ noted that, although Dr. Hooper restricted Plaintiff to no climbing, crouching, or crawling, there was no objective evidence demonstrating knee problems.  *Id.*  The ALJ explained:

> Physical examinations throughout the record show full range of motion in the knees and normal strength and sensory exams in the lower extremities.  There is no x-ray evidence of knee problems, and the claimant only takes over-the-counter medication for alleged pain.

*Id.*  With regard to Dr. Hooper's assessed limitations for sitting, standing, and walking, the ALJ noted that, "again, there is no objective testing or evidence of knee or back problems that would account for Dr. Hooper's restrictive limits in sitting, standing and walking."  *Id.*

On June 25, 2008, DDS physician Dr. Gomez examined Plaintiff.  TR 18, 355-59.  Dr. Gomez noted that although Plaintiff complained of knee pain, she was able to get on and off the exam table without difficulty.  TR 356.  With regard to Plaintiff's lower extremities, upon examination, Dr. Gomez found:

> There was no cyanosis, clonus or edema.  The pedal pulses are present. ... Hips: Both hips had a ful range of motion except for internal rotation.  Both hips showed internal rotation at 20 degrees. There was no tenderness to palpation. Knees: Left knee had a full range of motion.  The right knee showed flexion 120 degrees, normal extension.  There was moderate tenderness to palpation. Ankles: Left ankle had a full range of motion.  The right ankle had mild edema and moderate tenderness to palpation.  Dorsiflexion was normal, plantarflexion showed 20 degrees.  Examination of the patient's extremities: In the patient's right foot, her small toe was red and had changes consistent with an infection. ... Motor strength 4/5 in the upper and lower extremities.  Deep tendon

reflexes 2+ bilaterally in the upper and lower extremities. The vibratory sensation intact. Straight leg raising test negative in the lying and sitting position.

TR 357-58.

Dr. Gomez also found:

Back: There was moderate tenderness to palpate in the lumbar spine with a full range of motion.

Neurological: ... Sensation was intact in the upper and lower extremities. Patient did the tandem walk and heel walk normally. She could not walk on her toes due to her recent injury. She could not squat. She stood on 1 leg normally.

TR 358.

On June 27, 2008, Dr. Gomez completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) form regarding Plaintiff. TR 18, 360-65. In that statement, Dr. Gomez opined that Plaintiff could occasionally lift up to 20 pounds, frequently carry up to 20 pounds, sit for 6 hours in an 8-hour workday (3 hours uninterrupted), stand for 6 hours in an 8-hour workday (2 hours uninterrupted), and walk 4 hours in an 8-hour workday (1 hour uninterrupted). TR 360-61. Dr. Gomez also opined that Plaintiff could occasionally reach, handle, finger, feel, push/pull, operate foot controls, climb stairs/ramps/ladders/scaffolds, balance, stoop, kneel, crouch, and crawl. TR 362-63. Dr. Gomez further opined that Plaintiff could not read "very small print," but could read ordinary newspaper or book print, could see a computer screen, and could determine differences in shape and color of small objects. TR 363. Dr. Gomez opined that Plaintiff was able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, approaching people, and approaching vehicles. *Id.* Dr. Gomez additionally opined that Plaintiff could occasionally be exposed to operating a motor vehicle,

humidity/wetness, dust/odors/fumes/pulmonary irritants, extreme cold, extreme heat, and vibrations, but should never be exposed to unprotected heights or moving mechanical parts. TR 364. Dr. Gomez also opined that Plaintiff could be exposed to "Moderate (Office)" noise. *Id.* Finally, Dr. Gomez opined that Plaintiff could perform activities like shopping; could travel without a companion for assistance; could ambulate without using a wheelchair, walker, 2 canes, or 2 crutches; could walk a block at a reasonable pace on rough or uneven surfaces; could use standard public transportation; could climb a few steps at a reasonable pace with the use of a single hand pull; could prepare a simple meal and feed herself; could care for her personal hygiene; and could sort, handle, and use paper files. TR 365.

After reviewing the evidence of record, the ALJ found that Dr. Gomez's findings were credible and consistent with Plaintiff's medical and testimonial records. TR 18-19. Accordingly, because Dr. Gomez's "findings do properly reflect limitations consistent" with the evidence, the ALJ agreed with Dr. Gomez's June 2008 opinion. *Id.*

Although Dr. Hooper treated Plaintiff for an extensive period of time, as has been noted, Dr. Hooper's opinion is unsupported by his treatment records and by objective medical evidence. Dr. Hooper's opinion also contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *Id.*; *See also,* 20 C.F.R. § 416.927(e)(2). Because Dr.

Hooper's opinion is unsupported by his treatment records and by objective medical evidence, and contradicts other substantial evidence in the record, the Regulations do not mandate that the ALJ accord Dr. Hooper's evaluation controlling weight. Plaintiff's argument fails.

## 2. Consideration of All Relevant Medical Evidence in the Record

Plaintiff maintains that the ALJ failed to consider all of the evidence before him. Docket No. 12-1. Specifically, Plaintiff argues that the ALJ's "decision is a 'canned language' template that does not provide for any in-depth analysis." *Id.* Plaintiff contends that the ALJ failed to even mention four of her treating physicians (Drs. Leftwich, Landsberg, Weikert, and Grinde), so there is no way to know whether the ALJ considered their opinions. *Id.*

Defendant responds that the Regulations require an ALJ to consider all of the *relevant* evidence. Docket No. 15. Defendant contends that the ALJ did not need to discuss the opinions of Drs. Leftwich, Landsberg, Weikert, and Grinde because they are not "relevant evidence," as they were rendered between 1990-2002, well before Plaintiff's alleged onset date in 2006. *Id.* Defendant also argues that none of the evidence from these physicians discussed by Plaintiff "refers to her medical condition for any period close to her alleged onset date," and that "the doctors either did not indicate any work-related limitations or only temporarily restricted Plaintiff's activities during treatments." *Id.* Defendant additionally notes that the prior ALJ specifically considered and discussed the evidence from Drs. Weikert and Grinde, and did not find Plaintiff disabled. *Id.* Accordingly, Defendant contends that the ALJ was not required to consider the 1990-2002 opinions of Drs. Leftwich, Landsberg, Weikert, and Grinde.

The Code of Federal Regulations states that an adjudicator is required to assess a claimant's residual functional capacity based on all relevant medical and other evidence. 20

C.F.R. § 404.1545(a). An ALJ is not, however, required to consider medical evidence that is outdated or otherwise irrelevant to the claimant's case.

Plaintiff contends that the ALJ erred in failing to specifically reference the February 1990, March 1997, April 1999, and October 1999 records from Dr. Grinde (TR 206, 208, 212, 233); the October 1997 records from Dr. Leftwich (TR 285-86); the April 2000 and December 2000 records from Dr. Landsberg (TR 157-58, 163, 165); and the January 2001, June 2002, and October 2002 records from Dr. Weikert (TR 183, 187, 197-99). While Plaintiff is correct that the ALJ in the case at bar did not specifically reference the opinions of Drs. Leftwich, Landsberg, Weikert, and Grinde, the records at issue from Drs. Leftwich, Landsberg, Weikert, and Grinde significantly pre-date Plaintiff's amended disability onset date of February 15, 2006, and do not establish that Plaintiff was disabled. Significantly, neither Dr. Leftwich, nor Dr. Landsberg, nor Dr. Weikert, nor Dr. Grinde assigned Plaintiff any permanent work-related limitations or permanently restricted Plaintiff's activities during their treatment of her. *See, e.g.,* TR 158, 163, 165, 183, 185, 187-88, 197-99, 203, 206, 208, 212, 233, 275, 285-86. Additionally, the ALJ in Plaintiff's previous application for disability (October 2001) evaluated all the pertinent medical evidence available as of April 1, 2005, including records from Drs. Weiker and Grinde, and nevertheless determined that Plaintiff was not disabled. TR 41.

The ALJ in the case at bar appropriately discussed the relevant evidence and considered the recent findings that pertained to Plaintiff's work-related limitations. Specifically, the ALJ discussed Plaintiff's testimony, as well as medical records from Drs. Trubia, Frey, Hooper, Eluhu, Gomez, Patikas, and Gregg. TR 16-19. Plaintiff's argument that the ALJ failed to consider all the relevant evidence of record fails.

### 3.  Subjective Complaints of Pain

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ did not appropriately address her complaints of pain and associated limitations.  Docket No. 12-1.  Specifically, Plaintiff argues that the ALJ's finding that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment," was conclusory, that he "disregarded all her years of documented pain and suffering," and that he "completely discounted" her mental diagnoses.  *Id.*

Defendant responds that the ALJ appropriately determined Plaintiff's credibility, and properly discussed his "many reasons" for finding that her statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with his determined residual functional capacity assessment.  Docket No. 15.  Defendant states that, contrary to Plaintiff's assertion that the ALJ "disregarded all her years of documented pain and suffering," the ALJ actually accepted Plaintiff's allegations that were supported by the evidence.  *Id.*  Defendant argues that the ALJ properly disregarded only those of Plaintiff's allegations that were inconsistent with the evidence of record.  *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ accepted Plaintiff's report that she could lift approximately 20 pounds, as it was consistent with the accepted opinion of Dr. Gomez, discussed *supra.* TR 18.

The ALJ also accepted Plaintiff's testimony that she had difficulty reaching, as it was also consistent with the accepted opinion of Dr. Gomez. *Id.* The ALJ additionally accepted Plaintiff's contention that she could not read some small print, but was able to read normal print and drive, as it was consistent with the opinions of both Dr. Gomez and Dr. Hooper. *Id.*

After considering the medical and testimonial evidence of record, the ALJ ultimately found that:

> [T]he claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment.

TR 16.

In discounting Plaintiff's statements concerning the intensity, persistence, and limiting effects of her reported symptoms, the ALJ discussed the medical and testimonial evidence of record dating from 2004 through her hearing. TR 16-19. After reviewing the medical and testimonial evidence of record, the ALJ articulated, *inter alia*, that, while Plaintiff testified that she could sit or stand only 30 to 45 minutes at a time due to back pain, "there is no evidence that the claimant was reporting back pain to her physicians" and "no objective evidence that the claimant was having back problems." TR 18. The ALJ also noted Plaintiff's report that her pain "comes and goes" and that she takes only over-the-counter medications for pain relief, and opined that, accordingly, Plaintiff's pain was not quite as severe as she alleged. TR 18. With regard to Plaintiff's complaint of chest pain, the ALJ noted Plaintiff's report that it was "more like tightness," and that it was well-controlled by nitroglycerine and "quick tab[s]." *Id.* The ALJ recounted Plaintiff's testimony that she could not work primarily "due to joint pain and no

energy," but observed that Plaintiff took no prescription pain medication and that Plaintiff reported engaging in daily activities including watching television, grocery shopping, cooking, cleaning, dusting, vacuuming, and visiting friends and family. TR 19.

As can be seen, the ALJ's decision addresses not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. *Id.* The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir.

1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they are inconsistent with the residual functional capacity assessment.  TR 16.  As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.  Therefore, this claim fails.

## 4.  Consultative Examination and Evaluation of Plaintiff's Mental Conditions

Plaintiff argues that the ALJ failed to correctly evaluate her mental conditions.  Docket No. 12-1.  Specifically, Plaintiff maintains that while the ALJ accorded significant weight to the 2008 findings of Dr. Gomez, the ALJ disregarded the fact that Dr. Gomez "observed that the claimant had a flat affect, diagnosed a personality disorder, and recommended that the claimant undergo a mental evaluation."  *Id.*  Plaintiff maintains that the ALJ should have ordered a consultative examination to evaluate her mental conditions and their possible resultant impairments and limitations.  *Id.*

Defendant responds that the ALJ properly included no mental limitations in Plaintiff's residual functional capacity because Plaintiff never alleged that she had a mental impairment contributing to her disability.  Docket No. 15.  Defendant additionally states that there is no

evidence in the record that Plaintiff experienced any work-related limitations arising from a mental condition and that, accordingly, the ALJ was not bound to order a consultative examination.  *Id.*

The Sixth Circuit has held that the Commissioner is not required to order a consultative examination in order to assist a Plaintiff in establishing disability.  *See, e.g., Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990); *Landsaw v. Secretary*, 803 F.2d 211, 214 (6th Cir. 1986); and *Kimbrough v. Secretary*, 801 F.2d 794, 797 (6th Cir. 1986).  Moreover, the Regulations state that the agency will use a consultative examination "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, [and] a diagnosis or prognosis."  20 C.F.R. § 404.1519a(a)(2).

While Plaintiff is correct in noting that Dr. Gomez observed that she had a flat affect, diagnosed a personality disorder, and recommended that she undergo a mental evaluation, Dr. Gomez was conducting a consultative examination regarding Plaintiff's physical impairments, and there is no indication that he administered any mental diagnostic tests.  TR 355-59. Additionally, Dr. Gomez did not suggest that Plaintiff's mental issues affected her capacity to participate in substantial gainful activity.  *Id.*  Moreover, Dr. Gomez completed his medical source statement indicating that Plaintiff retained the residual functional capacity to perform a range of light work 3 days after he observed Plaintiff's "flat affect" and recommended a mental evaluation.  *Id.*

With regard to Plaintiff's argument that the ALJ "made no findings regarding [her] mental conditions," there is no indication in the record that Plaintiff ever alleged disability based upon mental limitations.  Moreover, Plaintiff's attorney and the ALJ engaged in the following

exchange during Plaintiff's hearing:

> ALJ: All right. Well, just a moment now. Is there any -- evidence of IQ scores in –
>
> ATTY: No.
>
> ALJ: -- in the claim file?
>
> ATTY: No.
>
> ALJ: Are they from school records or otherwise?
>
> ATTY: Never been alleged. It's never been alleged. And she got a high school diploma, so I didn't really pursue that. Like I said, I'm not really going to allege, you know, I'm not trying to win it on BIF, so, but there was Special Ed. all the way through school.
>
> ALJ: BIF being an acronym for borderline intellectual functioning.
>
> ATTY: Right.

TR 384-85.

Significantly, Plaintiff's attorney stated that no allegations regarding Plaintiff's IQ or intellectual functioning had ever been raised. *Id.* He further indicated that he was not raising borderline intellectual functioning as a basis for Plaintiff's disability. *Id.* He additionally indicated that, although Plaintiff had taken special education classes in school, she had earned a high school diploma, such that he did not feel it necessary to pursue issues of Plaintiff's level of mental functioning. *Id.* The ALJ verified through further questioning with Plaintiff herself that she graduated high school with a regular diploma, and that she knew how to read and write. TR 389-90.

To the extent that Plaintiff argues that the "personality disorder" noted by Dr. Gomez constitutes a disabling mental condition, the ALJ explicitly asked Plaintiff whether she was

"going to any mental health center" and whether she was taking any medication for her "emotions or nerves." TR 403. Plaintiff responded, "No" to both queries. *Id.* Moreover, as has been discussed above, when the ALJ asked Plaintiff why she could not work, she replied that she could not work as a result of pain and fatigue, not as a result of any mental limitation. TR 392, 403.

The record is devoid of evidence that Plaintiff suffered from severe mental impairments, much less that any severe mental impairment imposed work-related limitations on her, and Plaintiff has failed to meet her burden of proving otherwise. *See* 20 C.F.R. §§ 404.1512(c) and 416.912(c). Accordingly, the ALJ was not required to articulate findings regarding Plaintiff's alleged mental conditions, was not required to order a consultative examination of Plaintiff's alleged mental conditions, was not required to include any such mental limitations in his hypothetical questions to the vocational expert, and was not required to include any such mental limitations in his residual functional capacity determination. Plaintiff's argument fails.

## 5. Testimony of Vocational Expert

Plaintiff contends that the ALJ could not rely on the testimony of the VE because the ALJ "failed to consider [Plaintiff's] subjective complaints and limitations, mental conditions, and possible mental limitations," because the ALJ "failed to recommend a mental consultative examination as recommended by Dr. Gomez," and because the VE indicated that Plaintiff could not perform any stated jobs if Dr. Hooper's opinion was accorded controlling weight. Docket No. 12-1.

Defendant responds that Plaintiff's arguments regarding the VE's testimony "merely rehash" her prior arguments, analyzed above. Docket No. 15. Defendant essentially maintains

that, because Plaintiff bases her argument that the VE's testimony was unreliable on her arguments discussed above, Plaintiff's argument that the VE's testimony was unreliable must fail, as each of Plaintiff's prior arguments discussed above have failed. *Id.*

As has been previously discussed, the ALJ properly discounted Dr. Hooper's 2008 assessment, properly considered all the medical and testimonial evidence of record, properly considered Plaintiff's subjective complaints, was not required to order a consultative examination regarding Plaintiff's mental impairments, and properly handled Plaintiff's alleged mental impairments. There is simply no support for Plaintiff's allegations that the VE's testimony was somehow flawed or unreliable on account of the above.

The ALJ in the case at bar proffered proper hypothetical questions to the VE, and was entitled to rely on the VE's answers when formulating his determination. Plaintiff's claim, therefore, fails.

## 6. Evaluation of Plaintiff's Obesity and the Combined Effects of Obesity and Other Impairments

Plaintiff contends that the ALJ failed to properly evaluate her obesity and consider the combined effects of her obesity with her other impairments. Docket No. 12-1. Defendant responds that the ALJ was not required to provide a formal analysis of Plaintiff's obesity or the combined effect of her obesity and other impairments because "there is no evidence in the record that Plaintiff was diagnosed with obesity or had any work-related limitations caused by weight or excess body fat." Docket No. 15. Defendant also responds that, although Plaintiff argues that the ALJ failed to consider her obesity, Plaintiff "fails to identify any medical evidence indicating a diagnosis of, or functional limitations caused or aggravated by obesity." *Id.*

Obesity can be a severe impairment if "it significantly limits an individual's ability to do basic work activities." SSR 02-1p, 2000 WL 628049. An ALJ should consider a claimant's obesity when the record reveals that the claimant's obesity affects his/her functional capacity for work. *Id.*; *See also, Cranfield v. Commr of Social Security*, 79 Fed.Appx. 852, 857 (6th Cir. 2003).

In the case at bar, Plaintiff argues that she is obese because she is 5'2" and 170 pounds. Docket No. 12-1. The record reflects, however, that Plaintiff was "moderately overweight" in 1999, "mildly overweight" in 2000, 153-167 pounds in 2006-2007, and 152 pounds in 2008. TR 132, 142, 148, 304-307, 324-25, 333-35, 338, 341, 355-59. The record does not reflect that Plaintiff has been diagnosed as obese, or has complained of serious limitations arising from her weight. Additionally, as noted above, when the ALJ asked Plaintiff during her hearing why she could not work, Plaintiff reported that she could not work because of "pain and fatigue" TR 392. *See also*, TR 403. Plaintiff did not report that she could not work on account of her alleged obesity.

Given the lack of diagnosis of obesity and the lack of evidence demonstrating that Plaintiff's weight affects her functional capacity for work, the ALJ was not required to conduct a formal obesity analysis. Plaintiff's argument fails.

Plaintiff correctly asserts that the ALJ must evaluate the combined effect of her impairments. 42 U.S.C. § 423(d)(2)(B). Plaintiff, however, fails to show that the ALJ did not do so. Instead, Plaintiff simply maintains that the ALJ:

> . . . should have found that the claimant has a medically
> determinable impairment of obesity, and should have considered
> any functional limitations resulting from the obesity in his RFC
> assessment, in addition to any limitations resulting from any other

physical or mental impairments as mandated by SSR 02-1p.

Docket No. 16.

As discussed above, there is no evidence establishing that Plaintiff had a medically determinable impairment of obesity. Additionally, there is no evidence to support Plaintiff's claims that the ALJ erroneously failed to consider the combined effect of her impairments. To the contrary, as has been demonstrated through the discussions of the statements of errors above, the ALJ properly considered the medical and testimonial evidence of record and reached a reasoned decision.

## 7. Residual Functional Capacity

Plaintiff maintains that the ALJ erred in finding that Plaintiff retained the residual functional capacity to perform a range of light work because the ALJ erroneously disregarded the opinion of treating physician Dr. Hooper, because the ALJ did not discuss her mental limitations with the VE, and because the present ALJ did not accept the findings of the ALJ in Plaintiff's previous application. Docket No. 12-1. Plaintiff contends that if the ALJ had appropriately considered her actual exertional and nonexertional limitations, environmental restrictions, mental diagnoses, and complaints of pain, the ALJ would have determined that Plaintiff retained the RFC for less than a full range of sedentary work. *Id.* Plaintiff also argues that under *Drummond v. Comm'r of Social Security*, 126 F.3d 837 (6th Cir. 1997), the present ALJ was bound by the April 1, 2005 findings of a prior ALJ who stated that Plaintiff was limited to a range of sedentary work. *Id.* Plaintiff acknowledges that under *Drummond*, an ALJ is not bound by a previous residual functional capacity finding if there is evidence that the claimant's medical condition has changed since the previous determination. *Id.* Plaintiff maintains,

however, that her medical condition has not improved since the prior determination. *Id.*

Defendant responds that the ALJ properly considered all of the evidence of the record in determining Plaintiff's residual functional capacity at the time of the hearing at issue. Docket No. 15. Defendant explains that Plaintiff's condition has improved since the previous residual functional capacity finding was rendered. *Id.* Defendant argues that, because the prior ALJ's determination gave controlling weight to a 2004 medical opinion that had changed by 2008, the ALJ was not bound by the prior residual functional capacity finding. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

The record in the case at bar is replete with doctors' evaluations, medical assessments, and test results, all of which were properly considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ, after evaluating all of the objective medical evidence of record and the claimant's level of activity, determined that Plaintiff retained the Residual Functional Capacity for:

> . . . lifting/carrying 20 pounds occasionally and frequently; sitting
> 6 hours (3 hours uninterrupted); standing 6 hours (2 hours
> uninterrupted); walking 4 hours (1 hour uninterrupted); occasional
> reaching, handling, fingering, feeling, pushing/pulling, and
> operating foot controls; occasional climbing, balancing, stooping,
> kneeling, crouching and crawling; no reading very small print but
> able to read newspaper or book print and computer screens; no
> exposure to unprotected heights and moving machinery; occasional
> operation of motor vehicles; and occasional exposure to humidity/
> wetness, irritating inhalants, temperature extremes and vibration.

TR 16.

The ALJ in Plaintiff's previous disability application rendered a decision on April 1, 2005 finding that Plaintiff was not disabled because she could perform a limited range of sedentary work. TR 40. The ALJ in Plaintiff's current application noted that the previous ALJ had based his residual functional capacity determination on a 2004 opinion of Dr. Hooper. TR 19. The ALJ in the current application acknowledged that Dr. Hooper's 2004 opinion was supported by the medical evidence in the record at that time, but stated that, in relation to Plaintiff's current application, both Dr. Hooper and Dr. Gomez had provided more recent opinions that indicated that Plaintiff's capabilities had changed since the previous ALJ's 2005 decision. *Id.*

As discussed above, the ALJ accorded appropriate weight to Dr. Gomez's 2008 Medical Source Statement of Plaintiff's Ability to do Work-Related Activities (Physical) form. *Id.* Dr. Gomez's 2008 assessment supported the ALJ's determination that Plaintiff was capable of performing a range of light work and thus reflected a change in Plaintiff's functional capacity since the 2005 decision. *Id.* The ALJ, therefore, was not bound by the previous findings under *Drummond*. *Id.*

Moreover, as has been determined, the ALJ properly discounted Dr. Hooper's 2008

assessment, properly considered all the medical and testimonial evidence of record, properly considered Plaintiff's subjective complaints, was not required to order a consultative examination regarding Plaintiff's mental impairments, properly handled Plaintiff's alleged mental impairments, proffered proper hypothetical questions to the VE (the answers upon which the ALJ could rely), properly handled Plaintiff's alleged obesity, and properly considered the combined effect of Plaintiff's ailments. The ALJ properly evaluated the evidence in reaching his Residual Functional Capacity determination, and the Regulations do not require more. Plaintiff's claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge